IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| CHARLES E. WALKER, | ) | |
|    Plaintiff | ) ) ) | |
| v. | ) ) | Case No: 3:17-cv-00980<br>Judge Gershwin A. Drain |
| JOHN C. MCLEMORE, TRUSTEE, | ) ) | |
|    Defendant. | ) | |

**CHAPTER 11 TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR WITHDRAWAL OF THE REFERENCE PURSUANT TO 28 U.S.C. §157(d)**

Comes now John C. McLemore, Chapter 11 Trustee (the "Trustee") of the bankruptcy estate of Charles E. Walker (the "Debtor"), and for his Objection to the Debtor's Motion for Withdrawal of the Reference Pursuant to 28 U.S.C. §157(d) (Doc. 1) (the "Motion"), states as follows:

INTRODUCTION

The underlying bankruptcy case has been a long and winding road, primarily because the Debtor has consistently operated in bad faith. This Motion, the Debtor's most recent tactic to wrest control of finances away from judicial oversight, is completely devoid of any merit. The Debtor alleges that this Court *must* withdraw the reference of this matter because the Trustee's confirmed plan of reorganization allegedly violates the Debtor's constitutional and civil rights. The Debtor alleges that the confirmed plan of reorganization, which he consented to as part of a settlement agreement with the Trustee, makes him an involuntary servant of the Trustee. This is simply untrue. As a licensed attorney in the State of Tennessee, the Debtor knows or reasonably should know that, because the Trustee's confirmed plan does not require the Debtor to contribute

any work or capital to the plan[1], that no constitutional right or civil liberty is being infringed. The Motion has been filed by the Debtor in bad faith, as a means of stalling the Trustee's and the Bankruptcy Court's administration of his estate, and deserves summary dismissal.

FACTS

The Debtor initiated this bankruptcy case on February 29, 2016 by filing a voluntary petition for Chapter 11 relief in the Bankruptcy Court for the Western District of Tennessee. *See* Bankruptcy Doc. 1. On April 21, 2016, the Bankruptcy Court for the Western District of Tennessee transferred venue to the Bankruptcy Court for the Middle District of Tennessee because the Court found that the Debtor was not, contrary to his contentions, domiciled in the Western District. *See* Bankruptcy Doc. 44. On July 13, 2016, the Bankruptcy Court for the Middle District of Tennessee ordered that a Chapter 11 trustee be appointed to manage the bankruptcy estate of the Debtor. *See* Bankruptcy Doc. 134. The Debtor immediately appealed the appointment of a trustee and asked that the trustee appointment be stayed pending appeal, but that request was denied. *See* Bankruptcy Doc. 157.

On August 1, 2016, John C. McLemore was appointed to serve as the Chapter 11 Trustee for the estate of Charles E. Walker. *See* Bankruptcy Doc. 165. The Debtor, immediately and repeatedly, attempted to thwart the Trustee's administration of the bankruptcy estate by, among other things:

- Filing a motion to dismiss the bankruptcy case (*See* Bankruptcy Doc. 138);
- Refusing to turn over bank accounts to the Trustee (*See* Bankruptcy Doc. 202);
- Filing a motion to remove the Trustee (*See* Bankruptcy Doc. 239); and

---

[1] Indeed, the Trustee *specifically* amended his plan to provide that, as of the effective date of the plan, the Debtor was free to work, buy and sell property, borrow money or participate in any other capitalist venture for his own financial gain. *See* Second Revised Chapter 11 Trustee's Plan of Reorganization (Bankruptcy Doc. 630), at p. 6.

2

- Filing an adversary proceeding against the Trustee, which alleged that all of the property in the estate was owned by an unwritten, undocumented general partnership of the Debtor and Jon Paul Johnson and, thus, the bankruptcy estate was insolvent (*See* Bankruptcy Doc. 335).

The Bankruptcy Court denied each and every attempt of the Debtor to halt the Trustee's administration of the estate. While the Debtor was attempting to derail the case, the Trustee was busy resolving a large claim filed by a litigation claimant, fending off creditors seeking stay relief to foreclose, and selling property in order to meet the ongoing obligations of the bankruptcy estate. Even though the Debtor was fighting against the Trustee's management of his estate at every turn, the Trustee abandoned the Debtor's law practice back to him once the Trustee was satisfied that the estate had sufficient real estate holdings to pay all creditors in full. *See* Bankruptcy Doc. 448.

Most significantly for this action was the Trustee's settlement of a multi-million dollar litigation claim. That litigation, which had been contentiously fought for almost a year and was the root cause of the bankruptcy, was resolved by the Trustee on February 22, 2017. *See* Bankruptcy Doc. 497. The Trustee, knowing that it was in the best interest in the creditors of this estate for this matter to be wrapped up quickly and efficiently, succeeded in convincing the Debtor to join in the settlement. Notably, the Debtor agreed to:

> join in seeking approval of any plan that may be necessary to effectuate, finalize, enter into, or perform this settlement agreement in whole or in part, and not to object to, or take an appeal from an order approving, a plan in regard to either this settlement or any other matter of which they have notice, if such objection or appeal would, in effect or design, delay the approval, effectuation, finalization, or performance…of this Agreement.

*See* Bankruptcy Doc. 497, Exhibit A, p. 3, ¶ 3. Despite this agreement, the Debtor continued to resist the efforts of the Trustee to confirm a plan of reorganization. Having procured all relevant

3

parties' agreements, the Trustee filed his original plan and disclosure statement on March 6, 2017. *See* Bankruptcy Doc. 504 and 505. The Debtor filed two objections to the Trustee's plan, *see* Bankruptcy Doc. 529 and 607, and filed two competing plans. *See* Bankruptcy Doc. 531 and 594. The Court held an evidentiary hearing on April 25, 2017 to (a) consider the adequacy of the Trustee's disclosure statement and (b) determine whether to postpone the deadlines for voting on the Trustee's plan in order to put the Debtor's competing plan on the same voting track. Ultimately, the Court approved the Trustee's disclosure statement and set his plan for voting, *see* Bankruptcy Doc. 572, while it determined that the Debtor's plan was not feasible and, thus, would not be cause for delaying a vote on the Trustee's plan.

The Trustee complied with all deadlines established by the Court and procedures outlined by the Bankruptcy Code, and submitted his plan for voting. The Trustee's plan received the requisite votes from the creditors entitled to cast ballots. *See* Bankruptcy Doc. 612. The Bankruptcy Court conducted a contested confirmation hearing on June 11, 2017. At that hearing, the Bankruptcy Court determined that the Trustee's plan met all applicable confirmation requirements. However, the Bankruptcy Court asked the Trustee to make one slight alteration to his plan: to add a provision specifically stating that, upon the effective date of the plan, the Debtor could work in any manner he saw fit, borrow money, purchase and sell property, or engage in any other financial activity so long as the Debtor's activity did not adversely impact the value of the property of the estate. At the Court's suggestion, the Trustee amended his plan to include that language, *see* Bankruptcy Doc. 630 at p. 6, and the Bankruptcy Court entered an order confirming the Trustee's plan as amended. *See* Bankruptcy Doc. 633.

The Debtor was clearly displeased by the confirmation of the Trustee's plan. On June 24, 2017, ten days after confirmation of the plan, the Debtor filed a host of pleadings with the Bankruptcy Court, including:

- A notice of appeal of the Bankruptcy Court's confirmation order (*see* Bankruptcy Doc. 651);
- Objections to the claims of every secured creditor, all of whom he listed in his original schedules (*see* Bankruptcy Doc. 657-664);
- This Motion (*see* Bankruptcy Doc. 654); and
- A Motion for Stay Pending Appeal (*see* Bankruptcy Doc. 655).

The Debtor asks this Court to withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. §157(d). More specifically, the Debtor alleges that this Court *must* withdraw the reference due to 28 U.S.C. §157(d)'s "mandatory abstention" provision: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. §157(d). According to the Memorandum filed contemporaneously with the Motion, the Debtor alleges that the Trustee's confirmed plan violates the 13th Amendment to the United States Constitution and his civil rights under 42 U.S.C. §1994. The Debtor does not, however, point to any specific provision of the confirmed plan that he claims is the offending provision. He does not because there is no such provision.

LAW

"The party alleging mandatory withdrawal of reference, as the moving party, has the initial burden of going forward to show that the grounds for such a motion are established, and

ultimately the risk of non-persuasion." *In re Michigan Real Estate Ins. Trust*, 87 B.R. 447, 459 (E.D. Mich. 1988) (citing *Tedesco v. Mishkin*, 53 B.R. 120 (S.D.N.Y. 1986); *In re White Motor Corp.*, 42 B.R. 693 (N.D. Ohio 1984); and *In re Baldwin-United Corp.*, 47 B.R. 898 (S.D. Ohio 1984)). "The mere recitation of a section from the U.S. Code with the bald assertion that somehow it applies is insufficient to maintain the burden of proof on the motion." *Id.* The *White Motor Corp.* decision created a litmus test for whether the reference must be withdrawn:

> Section 157(d) must therefore be read to require withdrawal not simply whenever non-Code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding. The preceding analysis of legislative history and the Code's structure demonstrates the importance of the observations during the House debate that section 157(d) was not intended to become "an escape hatch through which most bankruptcy matters will be removed to district court," *[citations omitted],* and in the Senate debate that district courts "should not allow a party to use this provision to require withdrawal where such laws are not material to the resolution of the proceeding." *[Citations omitted].* Consequently, in light of the Congressional goal of having expert bankruptcy judges determine complex Code matters to the greatest extent possible, PBGC's motion to withdraw reference should be granted only if the current proceedings before the Bankruptcy Court can not be resolved without *substantial and material consideration* of ERISA and IRC provisions.

*In re White Motor Corp.*, 42 B.R. 693, 703-04 (N.D. Ohio 1984) (emphasis in original).

ARGUMENT

1. **The Debtor has not met his burden of proof.**

The Debtor has done nothing more than make a bald assertion that his Constitutional and/or civil rights have been violated.[2] He fails to point to a single provision in the confirmed plan that requires him to work and contribute capital to the plan, or that prevents him from engaging in any commercial activity in which he wishes to engage. Quite to the contrary, the Second Revised Chapter 11 Trustee's Plan of Reorganization (Bankruptcy Doc. 630), the plan

---

[2] The Debtor raised identical complaints prior to the confirmation of the Trustee's plan. The Bankruptcy Court summarily rejected his arguments.

6

that was confirmed by the Bankruptcy Court, provides that the plan will be funded exclusively by rental income, insurance proceeds, and proceeds from the sale of property, and that "after the Effective Date, the Debtor shall have authority to conduct business in any way that he sees fit, including purchasing property or borrowing funds, so long as such conduct has no impact on property held by this estate, or the income stream generated thereby, as of the date of confirmation." Bankruptcy Doc. 630, p. 6. Moreover, prior to even submitting the plan, the Trustee abandoned the Debtor's law practice back to him, walking away from any right that the estate might otherwise have in the Debtor's earnings. *See* Bankruptcy Doc. 448. Just because the Debtor alleges a non-existent civil rights violation does not automatically trigger a withdrawal of the reference.

## 2. The Debtor has waived his right to challenge jurisdiction.

Even if the Debtor had met his burden of proving that substantial and material consideration of federal law is necessary for confirmation of the Trustee's plan, he has nonetheless consented to the jurisdiction of the Bankruptcy Court over this matter and, thus, any request for withdrawal has been waived. The Debtor has never, before the order that essentially begins the wind-up of the bankruptcy case, challenged the jurisdiction of the Bankruptcy Court. It was the Debtor who voluntarily filed a Chapter 11 petition. Even after the Bankruptcy Court appointed a trustee to assume control over his financial affairs, and even after having appealed that appointment, the Debtor never raised any issue about whether the Bankruptcy Court had jurisdiction to determine whether any of his civil rights were being violated. In fact, the Debtor doubled-down on his submission to the jurisdiction of the Bankruptcy Court. The Debtor filed two plans of reorganization, and vigorously opposed the Trustee's plan. Not once during that time did the Debtor file a motion to withdraw the reference.

It was not until the Debtor lost his last shot at resistance did he suddenly determine that the reference must be withdrawn; but his continued filings in the Bankruptcy Court belie his allegations herein. Despite claiming that the Bankruptcy Court had no jurisdiction to continue administering this estate, he filed a Notice of Appeal of the Bankruptcy Court's confirmation order (*see* Bankruptcy Doc. 651) and eight objections to claims of secured creditors. (*See* Bankruptcy Doc. 657-664). By his continued submission to the jurisdiction of the Bankruptcy Court, the Debtor has waived his right to file this motion to withdraw the reference.

## Conclusion

The Debtor has waived his right to seek withdrawal of the reference and, even if he had not waived that right, he has not carried his burden of proving that substantial and material consideration of federal law is necessary for confirmation of the Trustee's plan. WHEREFORE, the Trustee respectfully requests entry of an order denying the Debtor's Motion and granting such other and further relief as is just.

Dated: July 11, 2017.

        Respectfully submitted,

        /s/ Phillip G. Young, Jr.
        Phillip G. Young, Jr.
        Thompson Burton PLLC
        6100 Tower Circle, Suite 200
        Franklin, TN 37067
        615-465-6008
        phillip@thompsonburton.com

        Attorneys for Chapter 11 Trustee